# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 14-cv-62850-BLOOM/Valle

WALLACE MOSLEY, a minor
by and through his co-guardians,
ROSLYN WEAVER & DINA CELLINI, ESQ.,

      Plaintiff,

v.

PROGRESSIVE AMERICAN INSURANCE
COMPANY,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Progressive American Insurance Company's ("Progressive" or "Defendant") Motion for Summary Judgment, ECF No. [151] (the "Motion"). The Court has reviewed the Motion, all opposing and supporting filings, the record in this case, and is otherwise fully advised in the premises. For the reasons that follow, the Motion is denied.

## I. UNDERLYING FACTS

Plaintiff Wallace Mosley ("Plaintiff" or "Mosley"), by and through his guardians Dina Cellini and Roslyn Weaver, commenced this action for first and third party bad faith, and breach of duty seeking damages stemming from a $22,663,058.00 judgment. The judgment was awarded to Mosley on November 6, 2014, in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (the "Underlying Case"). *See* Am. Compl., ECF No. [32], at ¶ 40; *see also* Final J., ECF No. [32-8].

This case arises out of an automobile accident that occurred on November 17, 2008, in Fort Lauderdale, Florida.  ECF No. [152], at 1 (Defendant's Statement of Facts, referenced herein as "Deft's SOF"); *see also* ECF No. [161], at 2 (Plaintiff's Contravention of Facts, referenced herein as "Plf's SOF").  Wallace Mosley, an 11-year-old boy, was operating a scooter when he entered a roadway and was struck by a vehicle.  Deft's SOF at ¶ 2.  The vehicle was operated by Progressive's insured, Earl Junious Lloyd ("Lloyd").  Deft's SOF at ¶ 2; Plf's SOF at ¶ 2.  Law enforcement and emergency services responded to the scene.  Plf's SOF at ¶ 3.

Defendant Progressive Insurance was Lloyd's car insurance provider.  Lloyd's insurance policy with Progressive (the "Policy") contained bodily injury limits of $10,000.00 per person, and a maximum of $20,000.00 per occurrence.  Deft's SOF at ¶ 4; Plf's SOF at ¶ 4.  Lloyd did not report the accident to Progressive.  Deft's SOF at ¶ 5.  Progressive was notified of the accident when it was contacted by Rosa Lopez of Flaxman Lopez ("Lopez"), the attorneys retained by Mosley's Great Aunt on November 26, 2008.  Plf's SOF at ¶ 5.  Progressive assigned the matter to claims professional Jishel Wyllie ("Wyllie").  Deft's SOF at ¶ 6.

On November 26, 2008, Lopez sent Progressive a letter of representation and a Fla. Stat. § 627.4127 request for insurance disclosure.  Plf's SOF at ¶ 7.  Progressive responded to the request but failed to advise that it asserted a coverage defense and failed to attach the Policy.  Plf's SOF at ¶ 7.  Lloyd was copied to this correspondence.  Deft's SOF at ¶ 7.

On December 1, 2008, Lopez faxed the accident report to Progressive, which was reviewed by Wyllie.  Plf's SOF at ¶ 56.  The accident report indicated that the injured party was an eleven-year-old pedestrian, who had been struck by Lloyd's vehicle while it was "traveling at a high rate of speed." ECF No. [152-2], at 3.  The report further indicated that the boy was

thrown approximately one hundred feet and was thereafter transported to the hospital. *Id.* Wyllie recorded in the claim notes that the accident report was not favorable to the insured. *Id.*; ECF No. [151-1], at 3-4.

Progressive attempted to contact Lloyd but could not reach him. Deft's SOF at ¶ 8. On December 3, 2008, Progressive mailed a reservation of rights letter for the insured's failure to notify. ECF No. [152-3]; Deft's SOF at ¶ 9; Plf's SOF at ¶ 9. Progressive did not take any further action or deny coverage after sending this correspondence. Deft's SOF at ¶ 9.

On December 4, 2008, although no demand had been received, Progressive proactively initiated a tender for full bodily injury limits of $10,000.00. Deft's SOF at ¶ 10.

On December 8, 2018, Lloyd contacted Progressive. Deft's SOF at ¶ 11. Progressive recorded Lloyd's statement at this time. *Id.*; ECF No. [151-13]. During this statement, Lloyd described that he believed he was not at fault for the accident and further advised Progressive that it was his understanding that Mosley was "okay." Plf's SOF at ¶ 11; ECF No. [151-13], at 9. At this time, Wyllie was already aware that Mosley was being treated for his extensive injuries and remained hospitalized. Plf's SOF at ¶ 58; ECF No. [152-2], at 3. On this same day, Progressive sent a letter to Lopez requesting Mosley's medical records. ECF No. [151-2]; Deft's SOF at ¶ 10.

On December 9, 2008, Lopez sent a counteroffer of settlement to Progressive (the "Flaxman Lopez Letter"). Plf's SOF at ¶ 14. The Flaxman Lopez Letter required that Mr. Lloyd complete and return a 12-page financial affidavit as a condition of settlement (the "Affidavit"). Plf's SOF at ¶ 14; ECF No. 151-3. The Flaxman Lopez Letter stated, "[i]f your insured refuses to execute said affidavit we will file suit to protect our client's rights. Should the executed affidavit reflect no visible assets we will execute the release and settle the claim." *Id.* The letter

set a 14-day time limit for return of the subject affidavit. *Id.* Wyllie received this demand on December 17, 2018.[1] Deft's SOF at ¶ 15. The Progressive claim notes indicate that Wyllie called Lloyd on December 17, 2008, to discuss the request for the Affidavit; however, did not document any of the details of what was discussed. Plf's SOF at ¶ 19; ECF No. [151-1], at 8; ECF No. 151-4. The Flaxman Lopez Letter was then forwarded to Lloyd on December 17, 2008. Deft's SOF at ¶ 17; Plf's SOF at ¶ 17. With the exception of the transmittal of the Flaxman Lopez Letter, no one at Progressive sent Lloyd any type of "excess letter" to advise Lloyd of his exposure above the policy limits. Plf's SOF at ¶ 61. Progressive did not explain to Lloyd that the deadline for providing the financial affidavit to settle the claim was December 23, 2008. *Id.* Progressive also did not notify Lloyd that it had determined that Lloyd was at fault. *Id.*

Wyllie's December 17, 2008, letter to Lloyd stated "[e]nclosed please find a copy of correspondence we have received from Wallace Mosley's attorney requesting that you complete and return the enclosed affidavit." Deft's SOF at ¶ 17; ECF No. 151-4. Wyllie testified that Lloyd advised her at that time that he would not be completing the requested affidavit due to his religious and moral beliefs. ECF No. [151-17], at 222:13-223:5.

On December 23, 2018, Wyllie again followed up with Lloyd regarding the Affidavit. ECF No. [151-1], at 8. During their telephone call on December 23, 2008, Wyllie claims that Lloyd refused to execute the Affidavit, asserting that he was immune from suit as a Sovereign Citizen, and claimed that the Affidavit was an "invasion of his privacy." ECF No. [151-1], at 8. Wyllie testified that it was her impression that Lloyd was "adamant" during their conversations that he was not subject to Florida law because he was a Sovereign Citizen of Moorish descent. ECF No. [151-16], at 177:20-178:3; *see also id.* at 79:19-23 ("I can tell you from the just the tone and the theme is that Mr. Lloyd was adamant about the fact that, you know, he felt that due

---

[1] This letter was received in Progressive's mailroom on Friday, December 12, 2008. Deft's SOF at ¶ 15.

to, you know, his religious beliefs and his moral beliefs that, you know, he was not going to complete the form.").

During deposition, Wyllie testified that due to the unique nature of Lloyd's assertions she specifically remembered her conversations with him. ECF No. [151-20], at 203:5-15. Diary notes made contemporaneously with the time and date of the conversation evidence the calls between Lloyd and Progressive. ECF No. [151-1]. However, the logs do not detail the specific content of the conversation. Plf's SOF at ¶ 19. Wyllie did not document Lloyd's statements in the claim file, nor did she notify her Claims Manager or Claims Legal of Lloyd's refusal to complete the affidavit on religious, moral or personal reasons. Plf's SOF at ¶ 22. Wyllie did not have any concerns that Lloyd was having difficulty understanding the situation. ECF No. [151-16], at 83:24-85:2 ("In my conversations with Mr. Lloyd he came across as a competent and capable adult. I didn't have any concerns or any issues with him in terms of him understanding anything that we discussed."). Lloyd testified he does not recall a discussion with Wyllie where the importance of the financial affidavit was explained to him. Plf's SOF at ¶ 16.

In a letter dated January 5, 2009, Lloyd responded to the Flaxman Lopez Letter with his own self-authored affidavit outlining the reasons for his refusal to comply with the Flaxman Lopez Letter's requests. ECF No. [151-5]. The response was prepared by Lloyd's "Moorish law counsel" Roderick Colebrook.[2] ECF No. [153-11], at 82-83. Upon receipt of Lloyd's response asserting sovereignty and immunity from suit, Progressive did not seek an extension of time to respond to the Flaxman Lopez Letter. Plf's SOF at ¶ 14. Progressive forwarded the Response to Lopez via a letter dated January 16, 2009. ECF No. [151-6].

On March 26, 2009, attorney Flaxman called Progressive to follow up regarding the Affidavit. Plf's SOF at ¶ 34. Wyllie suggested that attorney Flaxman conduct his own asset

---

[2] Roderick Colebrook is not a licensed attorney.

search. *Id.*

Attorney Flaxman instructed his staff to obtain a "bad faith" opinion from attorney David Deehl, Esq. *Id.* The matter was eventually referred to attorney David Deehl to pursue a bad faith claim. Deft's SOF at ¶ 36; Plf's SOF at ¶ 36. Deehl subsequently filed suit against Lloyd on May 5, 2009. Deft's SOF at ¶ 36. Progressive did not notify Lloyd that if he received a summons and complaint he should notify Progressive who would provide an attorney to Lloyd at no expense to him. Plf's SOF at ¶ 37. Lloyd turned to his Moorish Legal Counsel for assistance. ECF No. [151-7]. Colebrook prepared a *pro se* Petition for Dismissal. ECF No.[151-20], at 9.

The Petition for Dismissal contained the same claims of immunity as the January 5, 2009 response and stated the reasons Lloyd believed he was not at fault for the accident. *Id.* On June 11, 2009, Deehl faxed Progressive a copy of the Complaint and the *pro se* response. Plf's SOF at ¶ 40. Deehl advised Progressive of his opinion that Progressive had committed bad faith with respect to its handling of the request for the financial affidavit. *Id.* On June 11, 2009 Progressive documented the bad faith opinion of Deehl. ECF No. [151-1], at 13. Progressive then hired an attorney to represent Lloyd in the Underlying Case. Deft's SOF at ¶ 40; Plf's SOF at ¶ 40. Following the trial on October 2014, Lloyd was found 30% liable for Plaintiff's injuries. Deft's SOF at ¶ 51. A Final Judgment in the amount of $22,663,058.00 was entered against Lloyd together with attorneys' fees and costs. *Id.* On December 9, 2014, Plaintiff commenced the instant action. ECF No. [1].

On October 18, 2017, Lloyd learned that Progressive may not have acted in good faith and he executed an "Agreement & Assignment of All Rights and Claims" in favor of Mosley. Plf's SOF at ¶ 52; ECF No. [152-5]. Lloyd testified that he does not recall Progressive explaining the significance of the request for the financial affidavit to him. Plf's SOF at ¶¶ 16,

67.    Lloyd further testified that had he been informed before the Flaxman Lopez Letter's deadline that by not executing the affidavit he was exposing himself to a substantial excess judgment against him personally and that his belief of immunity may not protect him, he would have completed the Affidavit.  Plf's SOF at ¶ 67; ECF No. [152-5]; ECF [151-19], at 25:9-14.

## II.    <u>LEGAL STANDARD</u>

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  Further, the Court does not weigh conflicting evidence.  *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th

Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor.  *Shiver*, 549 F.3d at 1343.  Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate.  *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied."  *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993))).

## III.   DISCUSSION[3]

Progressive argues that judgment as a matter of law is proper against the Plaintiff.  It argues that no genuine issues of material facts exist and Progressive complied with the requirements of Florida law in communicating the demand for the Affidavit to its insured and the consequences of not executing same.   ECF No. [151], at 3.  Progressive further argues that

---

[3] Sitting in diversity jurisdiction, this Court applies the law of Florida, the forum state.  *See Novoa v. GEICO Indem. Co.*, 542 F. App'x 794, 795 (11th Cir. 2013) (citing *Fla. Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Plaintiff's "only available argument" is that Progressive should have done something more to compel Lloyd to complete the Affidavit. *Id.*

Plaintiff, however, argues that summary judgment is improper as disputed issues of material facts exist as to whether Progressive failed to adequately advise Lloyd of the probable outcome of litigation and to warn him of the possibility of an excess judgment. ECF No. [162], at 19. Further, Plaintiff contends that the steps taken by Progressive were inadequate and that it should have done all that was necessary to ensure Lloyd fully understood the gravity of the situation he was facing. *Id.* at 18.

After a full review of the record and weighing the totality of the circumstances, the Court agrees with Plaintiff. Triable issues of material facts exist, and the granting of Defendant's Motion is improper.

When an insurer undertakes the defense of an insured, the insured becomes dependent upon the acts of the insurer. *See Macola v. Government Employees Ins. Co.,* 953 So. 2d 451, 455 (Fla. 2006). This places the insurer in a fiduciary relationship with the insured, and the insurer owes a duty to the insured to refrain from acting solely on the basis of the insurer's own best interest in considering a settlement. *See Id.; see also Allstate Indem. Co. v. Ruiz,* 899 So. 2d 1121, 1125 (Fla. 2005); *State Farm Mut. Auto. Ins. Co. v. Laforet,* 658 So. 2d 55, 58 (Fla. 1995). "The insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured." *Auto Mut. Indent. Co. v. Shaw,* 134 Fla. 815, 859 (1938) (quoting *American Mut. Liability Ins. Co. of Boston, Mass. v. Cooper,* 61 F.2d 446, 448 (5th Cir.1932)). Thus, the essence of an insurance bad faith claim is that the insurer acted in its own best interests, failed to properly and promptly defend the claim, and thereby exposed the insured to an excess judgment. *See Id; see*

*also Macola,* 953 So. 2d at 458; *Cunningham v. Standard Guar. Ins. Co.,* 630 So. 2d 179, 181 (Fla. 1994).

In Florida, the standard of care for insurers when undertaking the defense of their insureds is as follows:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business..... The good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Boston Old Colony Ins. Co. v. Gutierrez,* 386 So. 2d 783, 785 (Fla. 1980). To fulfill this duty, "an insurer does not have to act perfectly, prudently, or even reasonably." *Novoa*, 542 F. App'x at 796. "Rather, insurers must 'refrain from acting solely on the basis of their own interests in settlement.'" *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Laforet,* 658 So. 2d 55, 58 (Fla. 1995)). If the insurer defaults on this duty, naturally, it has acted not in good faith, but in bad faith. "In Florida, the question of whether an insurer acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Jaimes v. GEICO Gen. Ins. Co.*, 534 F. App'x 860, 865-66 (11th Cir. 2013) (citing *Laforet*, 658 So. 2d at 62-63). Logically, "[t]he inquiry focuses on the actions of the insurer in fulfilling its obligations to the insured." *Id.* (citing *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 677 (Fla. 2004)). In short, "an insurance company 'acts in bad faith in failing to settle a claim against its insured within its policy limits when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly towards its insured and with due regards to his interests.'" *Id.* (quoting *Berges*, 896 So. 2d at 671).

A valid bad faith claim not only requires evidence of the bad faith itself, but "a causal connection between the damages claimed and the insurer's bad faith." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 903-04 (Fla. 2010). Generally, "[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury." *Boston Old Colony Ins. Co.*, 386 So. 2d at 785 (citation omitted).

In order to survive a motion for summary judgment, Plaintiff must provide sufficient evidence for a reasonable jury to conclude that the insurer defendant acted in bad faith and that the bad faith caused the excess judgment against the insured.

In *Hinson v. Titan Ins. Co.*, 656 F. App'x 482 (11th Cir. 2016), the Eleventh Circuit reversed the a district court order granting an insurance company's motion for summary judgment, finding that "[a]fter reviewing the 'totality of the circumstances' [of the] case in the light most favorable to Hinson . . . genuine issues of material fact preclude[d] entry of summary judgment in favor of Titan on Hinson's bad-faith claim, particularly as it relate[d] to Titan's conduct upon receiving the time-limited settlement offer." *Id.* at 487–88

The facts in Hinson are strikingly similar to the facts at bar. In *Hinson,* prior to receiving a demand and upon learning of the severity of the injuries sustained by the claimant, the insurer sent its insured a letter stating that the claim could exceed the policy limits, that the matter could proceed to litigation, and that *Hinson* could be personally liable for an excess judgment. The insurer offered the claimant the full $10,000 bodily-injury limits in exchange for an executed release of all claims for its insured, which was not immediately accepted. Titan then received a demand letter on behalf of the claimant who stated that he was willing to settle if several material terms were met within a twenty-day deadline. Titan then made several attempts to contact its insured to no avail, even hand-delivering the affidavit to the insured's place of residence. The

insurer's letter did not specifically identify the deadline by which the affidavit needed to be returned, nor did it clearly explain its significance. The insurer did not request an extension of time to return the affidavit. Hinson testified that he did not receive the affidavit from Titan and that had he received it and understood its significance, he would have promptly returned it completed.

Progressive attempts to distinguish the facts in *Hinson* by arguing that the insurer there never made contact with its insured regarding a clear condition of settlement. ECF No. [151], at 11. This argument is unavailing. Indeed, the court found in *Hinson* that summary judgment was unwarranted where the insurer sent numerous detailed letters explaining the gravity of the circumstances to its insured and the insured testified he never received such letters and further that he would have promptly returned the affidavit had he been told to do so. Here, Progressive did not send Lloyd any written communications explaining the significance of the Affidavit or the potential of an excess judgment being placed against him personally during the critical 14-day deadline. Instead, during that time, the only written communication Progressive sent to its insured was the Flaxman Lopez Letter from claimant's counsel. ECF No. [151-3]. In considering the totality of the circumstances, the forwarding of the Flaxman Lopez Letter is insufficient to find, as a matter of law, that Progressive satisfied its duty under Florida law.

The Flaxman Lopez Letter did not "advise as to the probable outcome of the litigation, warn of the possibility of an excess judgment, or advise the Lloyd of the steps he might take to avoid the same." *Boston Old Colony Ins. Co.,* 386 So. 2d at 785 (Fla. 1980). The letter was devoid of many, but arguably all, of the requirements set forth in *Boston Old Colony Ins. Co.* While it is true that the Defendant engaged in several phone calls with Lloyd, the record

demonstrates that, other than the above, no documentation was sent to Lloyd explaining in any discernable detail the gravity of the situation Lloyd was facing.

Progressive further argues that it fulfilled its duty through Wyllie's communications with Lloyd, and that Progressive ultimately concluded that "Lloyd had the right to his personal religious, philosophical, and moral beliefs," in making the decision to forward Lloyd's response to the Flaxman Lopez Letter. Deft's SOF at ¶ 30. Nonetheless, the fact that Lloyd asserted sovereignty may be a factor to consider but "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." *Berges v. Infinity Ins. Co.*, 896 So. 2d at 677 (Fla. 2004).

Progressive also relies on *Maldonado v. First Liberty Ins. Corp.*, *See, e.g.*, *Maldonado v. First Liberty Ins. Corp.*, 546 F. Supp. 2d 1347, 1348–50 (S.D. Fla. 2008), *aff'd*, 342 F. App'x 485 (11th Cir. 2009), a case in which the district court granted summary judgment for the insurer. The facts in *Maldonado*, however, are inapposite to those presented here. There, the facts were undisputed as the court considered cross motions for summary judgment. Summary judgment in favor of the insured was proper as the insurer sent multiple detailed letters advising its insured that the execution of an affidavit would prohibit any personal exposure the claimant may have for damages. This evidence is lacking here and the nature and extent of the conversations between Wyllie and Lloyd that Progressive relies upon are in dispute. *See* Plf's SOF at ¶¶ 16, 21-23. As such, material issues of fact remain in dispute. *See also, Geico General Ins. Co. v. McDonald*, 315 Fed. Appx. 181, 184 (11th Cir. 2008) ("Viewing the evidence in the light most favorable to the Plaintiffs, the evidence was sufficient to create a question of fact regarding whether GEICO's actions were reasonable. The evidence showed that although GEICO identified this claim as one that would far exceed policy limits, *GEICO never sent the*

13

*McDonalds the letter it had prepared advising them of the potential for excess liability*.") (emphasis added).

Progressive contends that no genuine issue of material fact exists as the conduct and deposition testimony of Wyllie, its claims professional, demonstrates that it complied with the requirements of Florida law. Indeed, record evidence does reflect that Wyllie contacted Lloyd several times prior to the expiration of the Flaxman Lopez Letter's deadline by phone to explain the Affidavit. The Court observes that call notes exist that were made contemporaneously with calls and conversations with Lloyd. This evidence, however, is directly contradicted by other evidence in the record. Indeed, during his deposition, Lloyd testified that "I had a misunderstanding there. Nobody explained that to me. And I think everyone has agreed that I got that much of an understanding, if not education. If somebody would've explained this to me, then that's all I had to do to be alleviated of this problem, it would've happened." ECF No. [151-19], at 33-4.

Defendant argues that the Court should not consider Lloyd's deposition testimony, taken ten years after the accident, because it is "self-serving" and "unreliable." However, the Court, in considering summary judgment may not "weigh the evidence and determine the truth of the matter," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), and must "resolve all reasonable doubts about the facts in favor of the non-movant." *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir. 1990).

Further, the Eleventh Circuit has found that while self-serving testimony may be unreliable, as it may be the result of collusion between the insured and the injured party, "such testimony, in most cases, would create a genuine issue of material fact sufficient to defeat the insurer's motion for summary judgment." *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d

1536, 1553 (11th Cir. 1991) (emphasis added); *see also United States v. Davis*, 809 F.2d 1509, 1512–13 (11th Cir.1987) (holding a defendant's "self-serving testimony, by itself, created a jury question with respect to his state of mind," when "no evidence directly contradict[ed] the defendant's depiction of his mental state," and when the testimony was not "so fantastic, so internally inconsistent, or so speculative that it had no probative value").

## IV.    CONCLUSION

Viewing the record in favor of Plaintiff, as the Court must do here, there is sufficient evidence to create a jury question regarding whether Progressive breached its duty of good faith.  The Court cannot say, as a matter of law, that Progressive satisfied its duty of good faith under the circumstances presented in the record.   Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Progressive Insurance Company's Motion for Summary Judgment, **ECF No. [151]**, is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 25th day of November, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record